In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.

MDL No. 381.

United States District Court, E. D. New York.

Aug. 14, 1979.

930

Schlegel & Trafelet, Ltd., Chicago, Ill., O'Hagan, Reilly & Gorman, Islip, N. Y., Leonard L. Rivkin, Rivkin, Leff & Sherman, Garden City, N. Y., Howard J. Trienens, Sidley & Austin, Chicago, Ill., Morton B. Silberman, Clark, Gagliardi & Miller, White Plains, N. Y., Cadwalader, Wickersham & Taft, Ronald S. Daniels, Townley & Updike, Bud G. Holman, William A. Krohley, Kelley, Drye & Warren, New York City, Baker & McKenzie, L. Steven Platt, Sullivan & Associates, Ltd., Chicago, Ill., Cyril Hyman, Asst. U. S. Atty. for the Eastern District, N. Y., Brooklyn, N. Y., for defendants.

Yannacone & Yannacone, P. C., Patchogue, N. Y., for all plaintiffs (except Kahler v. Dow et al.).

David Jaroslawicz, New York City, for plaintiff Kahler.

Joseph C. Zengerle, III, Shea & Gardner, Washington, D. C., for amicus curiae, The Council of Vietnam Vets.

GEORGE C. PRATT, District Judge.

On July 18, 1979, the court heard oral argument on various motions. Set forth below are the court's rulings on these motions.

## MOTION BY NORTHWEST INDUSTRIES FOR DISMISSAL OR SUMMARY JUDGMENT

Defendant Northwest Industries, Inc. moves in all cases except *Kahler v. Dow*, 79 C 922,[1] for dismissal under FRCP 12(b)(6) or summary judgment under FRCP 56, argu-

---

1. In *Kahler*, plaintiff has already stipulated to a dismissal against defendant Northwest Industries, Inc.

ing that it neither sold nor manufactured the chemicals which are the subject of this suit. Along with its dismissal and summary judgment motions (which are unopposed) defendant Northwest has submitted to the court stipulations of dismissal, pursuant to FRCP 41, signed by attorneys for all parties except Dow.

After consideration of all papers submitted, the court grants the summary judgment motion of defendant Northwest Industries, Inc., with the understanding that this judgment is binding only against the named plaintiffs, not against unnamed persons who may become parties to this action if a class is certified. *Roberts v. American Airlines*, 526 F.2d 757, 762–63 (CA7 1975). The clerk shall enter summary judgment in favor of defendant Northwest Industries, Inc.

### MOTIONS BY DOW, JOINED IN BY OTHER DEFENDANTS, TO STRIKE OR DISMISS ALL OR PART OF THE COMPLAINT

By notice of motion filed May 28, 1979, Dow moved to strike or dismiss all or part of the "massive 163 page, 574 paragraph complaint" filed in *Claxton v. Dow*, 79 C 527, one of the individual cases in this litigation. The motion was adjourned pending the first pretrial conference. One day before the conference, on June 20, 1979, one document, an "Amended Verified Complaint", some 171 pages and 600 paragraphs long, with attached exhibits adding some 94 pages, was filed, purportedly in all cases except *Kahler v. Dow*, 79 C 922. It is this Amended Verified Complaint (AVC) which was discussed at the first pretrial conference and at oral argument on July 18, 1979. Accordingly, it is this complaint to which defendants' motions to dismiss and strike are now deemed directed.

### A. Motion to Dismiss or Stay All Claims for Injunctive and Declaratory Relief

Dow moves to dismiss or stay all claims for injunctive and declaratory relief, "because the subject matter of these claims, namely, the question of whether 2, 4, 5–T

should be banned, is committed to the primary jurisdiction of the Environmental Protection Agency." Not all the equitable claims in the AVC involve the banning of 2, 4, 5–T; however, the court holds for reasons set forth below, that those claims that do so are committed to the primary jurisdiction of the EPA and must be stayed.

In a leading case, the Supreme Court explained the doctrine of primary jurisdiction as follows:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. * * * "Primary jurisdiction" * * * applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. [citations omitted].

No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. [citation omitted]. More recently, the expert and specialized knowledge of the agencies involved has been particularly stressed. *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956).

Cases since *Western Pacific* have elaborated upon and expanded the doctrine of primary jurisdiction. See discussion in

*Mississippi Power and Light Company v. United Gas Pipe Line*, 532 F.2d 412 (CA5 1976), *rehearing denied* 5 Cir., 540 F.2d 1085, *cert. denied* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977). The doctrine has been held particularly applicable where Congress has given an agency supervisory power over a comprehensive regulatory scheme, *Local 189, Amalgamated Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 684–85, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965); *Western Union Telegraph Co. v. Graphic Screening Corp.*, 360 F.Supp. 593, 595 (S.D.N.Y. 1973); where there are technical questions uniquely within the expertise and experience of an agency, *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); *Far East Conference v. United States*, 342 U.S. 570, 596, 72 S.Ct. 492, 96 L.Ed. 576 (1952); and especially where the disputed questions are already under consideration by the agency, *Mississippi Power and Light Co., supra*, at 414. The doctrine of primary jurisdiction applies to matters within the purview of the EPA. *Kennecott Copper Corp., Nevada Mines v. Costle*, 572 F.2d 1349 (CA9 1978); *Sierra Club v. Morton*, 379 F.Supp. 1254 (D.Col. 1974).

■■■ It is beyond dispute that under the above standards there is ground for invoking the doctrine of primary jurisdiction in this litigation. The requests for injunctive and declaratory relief raise matters within a comprehensive regulatory scheme (The Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 *et seq.*, as amended) under the supervision of the EPA. The request for injunctive relief against the continued sale and use of 2, 4, 5–T raises complex and technical questions (see plaintiffs' "Offers of Proof on Application for Temporary Injunction", a 25 page document replete with chemical and biological terminology and analysis), questions within the special competence of the EPA. Added to this, these complex questions are

the subject of on-going EPA hearings.[2] All of the usual standards having been met, the doctrine of primary jurisdiction applies, and it would be an abuse of discretion for this court to act before plaintiffs have brought their requests to the EPA. *ITT World Communications, Inc. v. New York Telephone Co.*, 381 F.Supp. 113, 119 (S.D.N.Y. 1974).

Without disputing this legal analysis, plaintiffs argue that referral to the EPA would be inequitable here:

The history of litigation by EPA under FIFRA is noted for lengthy delay. There is no way that the FIFRA proceeding as now constituted can be completed in less than a year and there is no assurance that if EPA cancels the remaining uses of 2, 4, 5–T and silvex, those cancellations can be effective in less than two to four years should DOW or any of the other parties opposing the cancellation appeal to the Courts. * * *

It also appears from a review of the statutes and procedures of the United States Environmental Protection Agency (EPA) that even completion of the pending proceedings to cancel certain registrations of 2, 4, 5–T and silvex cannot provide the broad prohibition of advertising, promotion, marketing and sale of any and all phenoxy herbicides that may be contaminated with polychlorinated dibenzo-p-dioxins (PCDDs) and polychlorinated dibenzo furans (PCDFs) that the Plaintiff veterans require and seek in the equity action brought before this Court.

It further appears that the offers of proof made by Counsel for the plaintiffs in this proceeding are substantially different than the offers of proof made by the United States Environmental Protection Agency (EPA) and it further appears that the threshold questions dealing with special risk to the population of veterans already exposed to these toxicants in Viet

---

2. It is undisputed that, "Dow and the EPA have been involved in agency and court proceedings concerning 2, 4, 5–T on and off for the past 10 years." Affidavit of Donald Frayer dated May 15, 1979. Recently the EPA has taken action

directly relevant to plaintiffs' equitable claims in this litigation. See affidavits of Donald Frayer dated May 15, 1979 and July 9, 1979; "Affirmation by Plaintiffs' Attorney: EPA timetable", dated July 22, 1979.

Nam might be better addressed in proceedings before this Court than in the administrative proceeding. * * *

Affirmant telephoned counsel for defendant The Dow Chemical Company in this action and spoke to Mr. Rivkin at approximately 4:00 p. m. on the afternoon of 19 July 1979 and explained in summary form the substance of this affidavit. Counsel indicated that he was not interested in this application since Dow and the other corporate defendants have bluntly stated their claim that the mere existence of a federal agency with some evidence of Congressional intent to vest that agency with responsibility for a matter touching upon the public health, safety, and welfare is all that is necessary to oust a federal Court of Equity of all jurisdiction of the same subject matter no matter what the circumstances might be that cry out to the conscience of the community for equitable relief. The Plaintiffs' (sic) disagree. Affirmation by Plaintiffs' attorney: EPA Timetable.

This court is not deaf to plaintiffs' pleas for prompt equitable relief against an allegedly serious environmental hazard, but neither is the EPA. By suspending the use of 2, 4, 5–T on forestry, rights of way, and pasture land, and by announcing its intention to hold hearings on the remaining uses of 2, 4, 5–T, the EPA has demonstrated its recognition of these hazards, and its willingness to take prompt action where necessary to protect the public in whole or in part. By requiring plaintiffs to first petition the EPA for relief, this court is not relegating plaintiffs to an administrative limbo. If the EPA, through action or inac-

tion, rejects plaintiffs' claims for prompt relief, plaintiffs may appeal under the Administrative Procedure Act to the courts from the EPA's decision. *Environmental Defense Fund, Inc. v. Hardin*, 138 U.S.App. D.C. 391, 428 F.2d 1093 (1970); *Environmental Defense Fund, Inc. v. Ruckelshaus*, 142 U.S.App.D.C. 74, 439 F.2d 584 (1971). The doctrine of primary jurisdiction requires only that plaintiffs make their request first to the EPA; and until this is accomplished, plaintiffs' requests for declaratory and injunctive relief relating to the banning of the sale or use of 2, 4, 5–T are stayed.[3]

## B. *Motion to Dismiss All Claims Asserted under Federal Law*[4]

Originally, Dow moved to dismiss all federal causes of action alleged in the *Claxton* complaint. As noted above, Dow's motion, joined in by all defendants, is now deemed to seek dismissal of all federal causes of action alleged in the AVC.

The court begins with plaintiffs' constitutional claims, summarized in ¶ 571 of the AVC:

That the serious permanent, and irreparable damage to the public health, safety, and welfare resulting from the continued efforts of the corporate defendants to manufacture, distribute, advertise, market, sell and promote the use of Phenoxy herbicides such as the 2, 4, 5-Trichlorophenoxy Aliphatics known to be contaminated with toxic synthetic organic chemicals such as 2, 3, 7, 8-Tetrachloro Dibenzo P-Dioxin (TCDD or "Dioxin") in wanton and reckless disregard for the toxic ef-

---

3. Plaintiffs also seek injunctive relief in connection with PCP, a chemical which the AVC refers to only in passing. Because the supplemental cross-motion which contains this and other requests for relief was made in violation of the practice and procedure order governing this litigation and otherwise without fair notice to defendants, all requests (save the motion for class certification) made in the supplemental cross-motion are denied, without prejudice to renewal at an appropriate time and with proper notice. The court notes, however, that any claims for equitable or declaratory relief subsequently asserted in connection with PCP will be

subject to the doctrine of primary jurisdiction, and should be presented first to the EPA.

4. While the defendants have moved to dismiss each federal claim alleged in the AVC for failure to state a claim, defendants have not moved to dismiss any claim for lack of subject matter jurisdiction. Because the subject matter jurisdiction of this court has not yet been challenged, there is no cause to consider the claims made in plaintiffs' "Memorandum of Law on Federal Question Jurisdiction with Offers of Proof".

fects of such contaminants upon the public health, safety and welfare violates the constitutional rights of all those so unfortunate as to be at risk from the toxic effects of such contaminants not only during this generation but in succeeding generations, which rights have been retained by the People under the Ninth Amendment of the Constitution and as such are protected under the "due process" and "equal protection" clauses of the Fifth Amendment of the Constitution and the "privileges or immunities", "due process" and "equal protection" clauses of the Fourteenth Amendment of the Constitution.

■ Since there is not yet a constitutional right to a healthful environment, *Ely v. Velde*, 451 F.2d 1130, 1139 (CA4 1971); *Tanner v. Armco Steel Corp.*, 340 F.Supp. 532, 537 (S.D.Tex.1972); *Fed. Emp. for Non-Smokers' Rights v. United States*, 446 F.Supp. 181, 183–185 (D.C.D.C.1978), there is not yet any constitutional right under the fifth, ninth, or fourteenth amendments to be free of the allegedly toxic chemicals involved in this litigation. Plaintiffs' constitutional claims are dismissed for failure to state a claim.

■ Plaintiffs allege "jurisdiction" under 42 U.S.C. § 1983, and presumably intend to assert a cause of action under this provision. Among other flaws in this claim, there are no allegations to suggest that there has been action, "under color of any statute, ordinance, regulation, custom, or usage, of any *State or Territory*." (emphasis supplied). Purely private action or action under color of federal authority does not qualify as state action under 42 U.S.C. § 1983. *Wheeldin v. Wheeler*, 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). Lacking allegations of action under color of state law, plaintiffs' claims under 42 U.S.C. § 1983 are dismissed for failure to state a claim.

■ In the jurisdictional allegations of the AVC, plaintiffs mention various federal statutes under which claims are intended to be alleged. For reasons set forth below, the claims under each of these statutes must be dismissed.

*15 U.S.C. § 1*: Plaintiffs allege no fact to support a claim under this provision. Plaintiffs' claim is, therefore, dismissed, without prejudice to repleading with proper supporting allegations.

*15 U.S.C. § 15*: This section protects purely commercial interests ("any person who shall be injured in his business or property * * *.") The allegations of the AVC deal with personal injuries, not injuries to commercial interests, therefore, plaintiffs' claim under 15 U.S.C. § 15 is dismissed with prejudice.

*15 U.S.C. § 22*: This is strictly a venue provision, which cannot support a claim for relief. Plaintiffs' claim under this provision is, therefore, dismissed with prejudice.

*15 U.S.C. § 26*: Plaintiffs allege no facts to support a claim under this provision. Plaintiffs' claim is therefore dismissed, without prejudice to replead with proper supporting allegations.

*15 U.S.C. § 45(a)(1)*: This provision is enforceable only by the FTC; it provides no remedy to private persons. *Alfred Dunhill Ltd. v. Interstate Cigar Co., Inc.*, 499 F.2d 232, 237 (CA2 1974). Plaintiffs' claim under this provision is, therefore, dismissed with prejudice.

*15 U.S.C. § 52*: Same as 15 U.S.C. § 45(a)(1) above. *Holloway v. Bristol-Myers Corp.*, 158 U.S.App.D.C. 207, 485 F.2d 986 (1973).

*15 U.S.C. § 55(a)(1), 55(c)*: These definitional provisions do not provide any right or remedy on which to base a claim. Plaintiffs' claims under these subsections are, therefore, dismissed with prejudice.

*15 U.S.C. § 1125(a)*: This provision creates a remedy for members of a commercial class, but not for consumers or members of the general public victimized by unscrupulous commercial conduct. *Colligan v. Activities Club of New York Limited*, 442 F.2d 686, 692 (CA2 1971) *cert. denied* 404 U.S. 1004, 92 S.Ct. 559, 30 L.Ed.2d 557 (1971). Plaintiffs' claim under this provision is, therefore, dismissed with prejudice.

In addition to the statutory and constitutional claims, plaintiffs allege that:

Upon information and belief, the corporate defendants have violated the *common law* and/or the statutory laws *of the United States of America* and/or the laws of the several states in advertising, promoting, marketing, and selling Phenoxy herbicides such as the 2, 4, 5-Trichlorophenoxy Aliphatics contaminated with the toxic synthetic organic chemical 2, 3, 7, 8-Tetrachloro Dibenzo P-Dioxin (TCDD or "Dioxin") since (sic) such contaminated herbicides having been and still being inherently dangerous and unfair for use. AVC ¶ 573 (emphasis supplied).

The facts are insufficiently developed at this point to determine that plaintiffs clearly lack a viable claim under federal common law. Accordingly, insofar as defendants' motions to strike or dismiss are addressed to the federal common law allegations, the motions are denied.

C. *Motion to Dismiss the AVC as an Improper Pleading in Four Separate Actions*

All defendants except Dow move to dismiss the AVC as a complaint improperly filed in four separate actions. This motion is misguided and is denied, since the court in its memorandum and order dated June 29, 1979 ordered that the AVC, "is deemed to be an amended complaint in *Green v. Dow*, 79 C 1194 * * *", a single action in this litigation. Without affecting the disposition of the above motion, the court hereby amends its June 29, 1979 memorandum and order by deleting the words quoted above, and ordering that the AVC "is deemed to be an amended complaint in *Chapman v. Dow*, 79 C 1195 * * *", a single action in this litigation in which plaintiff is neither an infant nor a deceased person. At the time of the June 29, 1979 order it was not brought to the court's attention that plaintiff Green was deceased. This change is made in light of defendants' pending motion to dismiss all claims made by infants and deceased persons (a motion considered below), in the hope that defendants Monsanto, Hercules, Diamond Sham-

rock, and North American Philips need make no further dilatory procedural motions on this issue.

D. *Motion to Dismiss Improper Parties Plaintiff*

The AVC refers to infants and deceased persons. Defendants (excepting Dow) move to dismiss all claims made by or on behalf of infants and deceased persons, arguing that under the FRCP an infant must be represented by a properly appointed guardian *ad litem*, and a deceased person by a duly appointed personal representative. The AVC is now a pleading of record in only one action, *Chapman v. Dow* (see point C. *supra*), and in *Chapman* no claims are actually made by or on behalf of infants or deceased persons. Infants and deceased persons are mentioned in the AVC and its exhibits as potential class members or representatives, and only in connection with plaintiffs' requests for class certification. Since there are no claims actually raised in the AVC by or on behalf of infants or deceased persons, defendants' motion to dismiss such claims is denied. The appointment of proper representatives for infants and deceased persons will be considered when and if necessary and in connection with the motion for class certification which will be heard on October 3, 1979.

In a section entitled "Other Interested Parties", the AVC refers to the Department of Defense, the Veterans Administration, and the Social Security Administration of the Department of Health, Education and Welfare. These same government agencies are mentioned in the demand for relief in the AVC, which asks that a fund be created to reimburse these departments and agencies for benefits paid or to be paid to the plaintiffs. Defendants argue that there is no authority suggesting that plaintiffs have standing to assert such claims on behalf of the United States, its departments, or its agencies. Defendants therefore move to dismiss all such claims.

The allegations referring to governmental departments and agencies appear only in the context of requests for relief, and are

not required in a complaint under the FRCP. Accordingly, these allegations are stricken. The question of whether plaintiffs may seek relief on behalf of governmental departments and agencies is at this point premature, and is not considered by the court. If, at a later date, appropriate relief might require participation in the action by any agency of the United States, suitable steps may then be taken.

E. *Motions to Strike Sections of the Complaint Alleged to be Improper as to Form*

■ Defendants ask that plaintiffs be required to amend the diversity jurisdiction allegations in the AVC, to add the domiciles of plaintiffs and the corporate residences of defendants. Because the AVC fails to properly allege diversity as a jurisdictional basis, allegations of diversity jurisdiction are hereby stricken from the AVC, with leave to replead these allegations in proper form.

■ Defendants ask that the court strike from the AVC the many allegations (amounting to 425 paragraphs) regarding the corporate history of the defendants. Because these allegations are unnecessary, would be burdensome to answer, and would unduly prejudice defendants, the court in its discretion strikes all allegations relating to the corporate history of the defendants. *Metropolitan Theater Co. v. Warner Brothers Pictures*, 12 F.R.D. 516, 517 (S.D.N.Y. 1952); *Fuchs Sugars and Syrups, Inc. v. The Amstar Corporation*, 402 F.Supp. 636 (S.D.N.Y.1975).

■ Defendants ask the court to strike from the AVC the allegations regarding phenoxy herbicides and dioxin (amounting to 68 paragraphs). While these allegations, in their present form, place an overly heavy pleading burden on defendants, more limited allegations regarding these chemicals may be appropriate. Accordingly, the allegations in the AVC regarding these chemicals are stricken, with leave to replead.

Defendants ask the court to strike the class action allegations for failure to comply with the standards prescribed by Civil Rule 11A of the Southern District of New York, a rule not adopted in this district but which has been cited by the Second Circuit and other authorities as a useful guide to class action pleading. There is no need to decide what if any authority Rule 11A has in this district. Although the class action allegations of the *Claxton* complaint fell far short, the expanded allegations of the AVC have substantially complied with the standards of Rule 11A of the Southern District of New York, removing the basis for defendants' motion to strike. Accordingly, defendants' motion to strike plaintiffs' class action allegations is denied.

## MOTION FOR AN ORDER REGULATING COMMUNICATIONS WITH THIRD PARTIES .

■ Citing Ethical Consideration 7–33 and Disciplinary Rule 7–107(G) of the Code of Professional Responsibility, and Rule 8 of the Criminal Rules of this court (incorporated into Rule 16 of the local civil rules), defendants seek an order regulating communications between counsel and non-parties to this litigation. The need for such an order is shown, say defendants, by past communications between Mr. Yannacone and the press. Defendants seek an order patterned on the sample orders in § 1.41 of the Appendix to the Manual for Complex Litigation (as amended to June 3, 1977), arguing that such orders have been entered in previous cases, and will unduly infringe neither the first amendment rights of counsel nor the rights of potential plaintiffs to receive information about this litigation.

After due deliberation, the court declines at this time to enter any order regulating communications between counsel and third parties. In light of the unique nature and public importance of this litigation, the contemporaneous action in related matters by other governmental agencies such as the EPA and the Veterans Administration, the apparent efforts by plaintiffs and others working on their behalf to obtain relief by appropriate legislation, the first amendment rights of counsel, and other important

 

considerations, it would be inappropriate for the court to enter any such order at this time. Of course, counsel continue to be bound by applicable provisions of the Code of Professional Responsibility, the local rules, and other standards regulating the conduct of attorneys in individual and potential class actions. Accordingly, defendants' motion is denied, with leave to renew at an appropriate time if need be.

## CONCLUSION

The motions of all parties are decided as set forth above. Plaintiff Chapman shall serve and file a second amended complaint, containing the remaining allegations of the AVC and any repleaded allegations, no later than 10 days from the date of this order. Each defendant shall answer or move with respect to the second amended complaint no later than 20 days after the second amended complaint is served upon it.

Any motions addressed to the second amended complaint shall be returnable October 3, 1979 at 3:00 p. m. Also returnable at this date and time (for oral argument, not evidentiary hearing) is plaintiffs' motion for class certification, made in plaintiffs' supplemental cross-motion discussed in footnote 3. All motion papers shall be served and filed in accordance with the practice and procedure order governing this litigation. To allow filing of pleadings, and filing and argument of motions, the second pretrial conference, scheduled for August 15, 1979 at 9:00 a. m., is adjourned to October 3, 1979, at 3:00 p. m.

As stated at the July 18, 1979 oral argument, the court deems all applicable statutes of limitation to have been tolled from the filing of the first class action complaint, this tolling to continue until 30 days after disposition of plaintiffs' class certification motion, should class certification be denied. In light of this ruling, it may be unnecessary for additional parties to file new complaints in this litigation. If class certification is denied, the court, recognizing that many potential plaintiffs may then wish to bring suit, will approve a simplified form of model complaint which may be used for new actions to be commenced.

SO ORDERED.