The Honorable Robin F. Wynne State Representative 801 Meek Fordyce, Arkansas 71742
Dear Representative Wynne:
This is in response to your request for an opinion regarding Act 462 of 1987, a copy of which is attached hereto. You have asked the following specific questions:
 1. Section one of paragraph A of Act 462 of 1987 does not include state supported institutions of Higher Education. Does Act 462 apply to colleges and universities?
 2. Will general office space as defined by section on paragraph C of this act include restrooms and hallways?
 3. Section two states "that the chief administrative officer of each State agency shall promulgate a smoking policy for the general office space of the State agency. The policy shall take into consideration the rights of both non-smokers and smokers. The smoking policy for each State agency shall be implemented by September 1, 1987." Does this section require that agencies establish a smoking area for smokers?
 4. If the policy promulgated by an agency bans all smoking within the building occupied by the state agency, what liability does the chief administrative officer incur?
 5. What steps may the chief administrative officer take to enforce a no smoking policy in areas of the agency commonly visited by citizens and taxpayers?
Act 462 is entitled "An Act to Require State Agencies to Implement a Smoking Policy for Their General Office Space; And For Other Purposes." The Act requires the chief administrative officer of each State Agency to promulgate a smoking policy "for the general office space of the State agency," taking into account "the rights of both non-smokers and smokers." A "State agency" is defined as "any department, agency, board, commission, office or other authority of the State." "General office space" means "space occupied by personnel performing their daily work functions."
Your first question involves the definition of "State agency" as set forth in Act 462. It is my opinion that the answer to this question is yes. The United States Supreme Court has, for example, recognized the University of Arkansas as "an official state instrumentality." Arkansas v. Texas, 346 U.S. 368, 370
(1953). The Court noted the following in reaching this conclusion:
 The University, which was created by the Arkansas legislature, is governed by a Board of Trustees appointed by the Governor with consent of the Senate . . . (T)he Board must report all of its expenditures to the legislature, and the State owns all the property used by the University. The Board of Trustees is denominated `a public agency' of the State (citing Jacobs v. Sharp, 211 Ark. 865, 202 S.W.2d 964 (1947)), the University is referred to as `an instrument of the state in the performance of a governmental work' (citing Vincenheller v. Reagan, 69 Ark. 460, 64 S.W.2d 278 (1901)), and a suit against the University is a suit against the State (citing Allen Engineering Company v. Kays, 106 Ark. 174, 152 S.W. 992 (1913)).
It may reasonably be concluded, based upon the rationale set forth by the U.S. Supreme Court, that the phrase "or other authority of the State" would be deemed to include State supported colleges and universities for purposes of Act 462.
I cannot provide a definitive answer to your second question. The Act's definition of "general office space" as "space occupied by personnel performing their daily work functions" appears to be quite broad and could conceivably include restrooms and hallways. However, the Attorney General, as a member of the executive department, cannot expand upon a stated definition where the General Assembly has not chosen to do so. The statute is silent with respect to specific areas that may be considered general office space. When a statute is silent upon some point, as in this instance, its meaning is to be interpreted by the courts on a case by case basis. Liberty Mutual Ins. Co. v. Billingsley,256 Ark. 947, 511 S.W.2d 476 (1974). We do not, to date, have the benefit of case law interpreting this provision; nor do there appear to be any analogous statutory enactments.
It must be noted in response to your third question that Section 2 of Act 462 does not on its face require State agencies to establish a smoking area for smokers. Further, it appears that no Arkansas court has mandated the establishment of smoking areas. Section 2 of Act 462 does require that the "rights of both smokers and non-smokers" be taken into consideration. It is reasonable to presume, therefore, that a Court would address the rights, if any, of smokers and non-smokers in considering whether this language does in fact mandate smoking areas.
Because the issue of smokers' and non-smokers' rights is relatively new, few guidelines have been established as precedent. Most cases have considered whether non-smokers have a right to be free from a smoke-filled workplace. Several courts have rejected arguments based upon the United States Constitution supporting limitations on the right to smoke. See, Federal Employees for Non-Smoker's Rights v. United States,446 F. Supp. 181 (D.D.C. 1978), aff'd 598 F.2d 310, cert. denied,444 U.S. 926 (1980); Gaspar v. Louisiana Stadium and Exposition District, 418 F. Supp. 716 (E.D.La. 1976); Kensell v. Oklahoma,716 F.2d 1350 (10th Cir. 1983). Other courts have specifically held that there is no constitutional right to a healthful environment. See, Ely v. Velde, 451 F.2d 1130, 1139 (4th Cir. 1971); In re Agent Orange Product Liability Litigation, 475 F. Supp. 928, 934 (E.D.N Y 1979); Washington v. District of Columbia, 802 F.2d 1478 (D.C. Cir. 1986).
Several courts have, however, held that the common law duty of an employer to provide a safe work area extends to limiting smoking in the workplace because cigarette smoke constitutes a serious health hazard to smokers and non-smokers alike. See, Shimp v. New Jersey Bell Telephone Co., 145 N.J. Super. 516, 368 A.2d 408
(1976); Smith v. Western Electric Co., 643 S.W.2d 10 (Mo.App. 1982); but see, Gordon v. Raven Systems and Research, Inc.,462 A.2d 10 (D.C.App. 1983) (employer owes duty to provide employees with a reasonably safe workplace, but not a duty to adapt his workplace to the particular sensitivities of the individual employee).
Arkansas recognizes the common law duty of an employer to provide a safe workplace for employees. Banks v. Pollard, 274 Ark. 43,621 S.W.2d 851 (1981); Wenger v. Kiech, 273 Ark. 369, 616 S.W.2d 714
(1981). This duty would certainly be a consideration if an Arkansas court were presented with the question of whether a State agency must establish a smoking area in implementing a smoking policy; and it may support an argument opposing smoking areas, given the proper factual setting. It is difficult to conceive, however, of each State agency's factual setting, and this question will in all likelihood ultimately be decided based upon the particular facts of each case.
Your fourth question involves the liability, if any, of a chief administrative officer who implements a policy which bans all smoking within the building occupied by the State agency. The officer would, in that instance, be acting in his official capacity pursuant to State law mandating the promulgation of a smoking policy. The State officer is immune from personal liability for his non-malicious acts occurring within the course and scope of his employment. Ark. Stat. Ann. 13-1420 (Cum. Supp. 1985); See also Carter v. Bush, 283 Ark. 16, 677 S.W.2d 837 (1984).
Your final question concerns what steps the chief administrative officer may take to enforce a no smoking policy in agency areas commonly visited by citizens and taxpayers. Act 462 offers no guidelines in this regard, nor are there any Arkansas cases on point, thereby precluding a definitive response. One might argue, however, that the chief administrative officer of a State agency may take steps reasonably necessary to enforce the policy, such as posting "No Smoking" signs and removing ash trays. Other states have included language to this effect in statutes devoted to the establishment of smoking policies, and an Arkansas court may conclude that such steps are incidental to the officer's promulgation of the policy.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elizabeth A. Walker.