Elyse ROBERTS, Plaintiff,

v.

CHEMLAWN CORPORATION, et al., Defendants.

No. 88 C 7272.

United States District Court, N.D. Illinois, E.D.

June 29, 1989.

William Schur, Chicago, Ill., and Bertram M. Goldstein and Robert J. Weltchek, Goldstein, Weltchek & Associates, Baltimore, Md., for plaintiff.

Mark L. Karasik, Baker & McKenzie, Chicago, Ill., and Michael K. Yarbrough, Porter, Wright, Morris & Arthur, Columbus, Ohio, for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

We rule herein on defendant Chemlawn Corporation's (Chemlawn) motion to dismiss, or, in the alternative, to stay proceedings. Defendant invokes the doctrines of primary jurisdiction and the exhaustion of administrative remedies requirement. We recognize that plaintiff's suit involves issues best determined by an administrative agency but nonetheless choose not to stay these proceedings.

### FACTS

Plaintiff Elyse Roberts (Roberts) was initially a member of a class action brought in the Eastern District of Pennsylvania. Individual plaintiffs were subsequently referred to the proper venues, and Robert's action eventually arrived here. She relies on the original class complaint before this court.

That complaint states that many individuals suffer from pesticide sensitivity, an ailment which causes illness soon after contact with pesticides. It specifically states that Roberts suffered nausea, headaches, shooting pains, irregular heartbeat, high blood pressure, uncontrollable shaking and other forms of bodily discomfort after Chemlawn treated her lawn with its pesticide mixture (cplt. at ¶¶ 102–103). The complaint further states that treatment at

the local hospital worsened Roberts' condition because the hospital also used the Chemlawn service (cplt. at ¶ 104). The complaint requests compensatory and punitive damages, as well as several forms of injunctive relief.

Chemlawn asserts that "plaintiff seeks to have this court function as a scientific tribunal and decide a virtually endless list of issues of law and fact regarding the uses and effects of at least eight pesticide products" (mem. in supp. of def. mo. to dism. at 3). Chemlawn therefore requests that this court dismiss or, in the alternative, stay these proceedings pending a determination of many of the factual issues by the United States Environmental Protection Agency (EPA).

## DISCUSSION

### I. *Primary Jurisdiction*

 Primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body...." *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). It is not, as defendants would have it, an automatic procedure. Rather, "[a] court considering deferring to an agency's primary jurisdiction must weigh the benefits of obtaining the agency's aid against the need to resolve the litigation expeditiously and may defer only if the benefits of agency review exceed the costs imposed on the parties." *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 201 (5th Cir.1988) (citations omitted). We agree that deferral to the expertise of the EPA on the technical aspects of plaintiff's case would be far preferable,[1] even though the EPA cannot provide every remedy sought by plaintiff.[2] However, the desire to employ this expertise must be weighed against the harm that might occur while awaiting an administrative decision, a delay which appears likely were defendant's motion granted.

As far as this court can tell, the EPA will not complete its assessment of non-agricultural pesticides until the beginning of the next century. *See* General Accounting Office, *Nonagricultural Pesticides, Risks and Regulations*, 26 (April 1986) (Nonagricultural Pesticides). The EPA's expedited review program (special review) appears backlogged as well.[3] According to GAO

---

1. Defendant claims that in order for this court to decide the issues involved in this suit, it would have to determine "1) whether the active and/or inert ingredients in eight different pesticide products are carcinogenic, teratogenic, or fetotoxic; 2) whether the pesticides in use in this country are safe for the purposes for which they have been made available; 3) whether the government's registration process for the named pesticides was inadequate; 4) whether the pesticides have dispersed into aquifers, streams and ponds thereby causing widely dispersed 'contaminations' and long-term 'persistency' problems; 5) whether the pesticide products accumulate in human tissue; 6) whether the chemical compounds can adversely impact certain idiosyncratic individuals' 'detoxification systems' and many other physiological effects of the use of, or exposure to, pesticide products" (mem. in supp. of def. mo. to dism. at 3).

2. Specifically, the EPA cannot provide plaintiff with any form of compensatory or punitive damages. Nor does it have the authority to provide most of the equitable relief sought. However, the procedural logistics of primary jurisdiction render this incongruity a distinction without a difference. "What bears continual emphasis is that the Court neither passes off final decision to another tribunal nor escapes from its ultimate duty to decide. For after the exercise of primary jurisdiction determination by the agency concerned, the case comes back in a suitable way for the Court, as a Court, to act." *Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 241 (5th Cir.1976). This court can therefore supplement the EPA's relief after the dispute leaves the administrative forum.

3. For an exhaustive description of the Special Review Procedure, *see* GAO, *Pesticides, EPA's Formidable Task to Assess and Regulate Their Risks*, 102–115 (April 1986). This same report provides the following brief summary:

"Currently, according to EPA officials, the special review process is essentially like an informal notice and comment rule-making, *except that it has no binding effect if an adversely affected party objects to the agency's special review decision.* If an affected party objects, it may request an administrative hearing. EPA's Assistant General Counsel for pesticide matters told us that the current hearing process can take two or more years...."
*Id.* at 113 (emphasis added).

estimates, "[s]pecial reviews completed through October 1986 have generally taken two to six years *or longer* to complete." *Pesticides, EPA's Formidable Task to Assess and Regulate Their Risks,* 105 (April 1986) (EPA's formidable task) (emphasis added). And while the special review process has allegedly been expedited, we question whether that action will significantly reduce the duration of the proceedings given the increased workload of the special review branch. See *id.* at 108. Our fears appear confirmed by those in a position to know: "The Chief of EPA's Special Review branch told us [the GAO] that, while special reviews have taken too long, it is difficult to speed up the special review process when EPA is dealing with so much uncertainty with respect to quality of risks and benefits data, and with competing resource demands from other pesticide program activities" (EPA's formidable task at 105–106).

Furthermore, the entire special review alternative presupposes a decision by the EPA to act on Roberts' request. Under 7 U.S.C. § 136d only the EPA administrator can initiate a special review [4] (mem. in supp. of pl. resp. at 17). Roberts asserts that the EPA administrator might refuse to initiate the relevant proceedings. Defendant admits that "technically plaintiff cannot initiate a review of the relevant pesticides ..." (defs. reply mem. at 10), but contends that an attempt must be made before this court can properly hear the case. We agree, but only to a point.

Defendant submits precedent specific to EPA review to support its motion to dismiss, and first points us to *In re "Agent Orange" Product Liability Litigation,* 475 F.Supp. 928 (E.D.N.Y.1979). Judge Weinstein therein dismissed plaintiffs' suit be-

cause he felt that primary jurisdiction properly laid with the EPA. In doing so, however, Judge Weinstein conceded that "[n]o fixed formula exists for applying the doctrine of primary jurisdiction. In every case, the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the *particular* litigation" (emphasis added). *Id.* at 931, *quoting United States v. Western Pacific Railroad Co.,* 352 U.S. at 64, 77 S.Ct. at 165. More importantly, deference in *Agent Orange* was paid to a *then ongoing* EPA review of the alleged health harms of Agent Orange.[5] It is axiomatic that "[t]he advisability of invoking primary jurisdiction is greatest where the issue is already before the agency." *Mississippi Power & Light Co. v. United Gas Pipe Line Co.,* 532 F.2d 412, 420 (5th Cir.1976). The pendency of EPA proceedings changed the nature of the Agent Orange case:

> This court is not deaf to plaintiff's pleas for prompt equitable relief against an allegedly serious environmental hazard, but neither is the EPA. By suspending the use of 2, 4, 5–T on forestry, rights of way, and pasture of land, and by announcing its intention to hold hearings on the remaining uses of 2, 4, 5–T, the EPA has demonstrated its recognition of these hazards, and its willingness to take prompt action where necessary to protect the public in whole or in part. By requiring plaintiffs to first petition the EPA for relief, *this court is not relegating plaintiffs to an administrative limbo.*

*Id.* at 933 (emphasis added). Judge Weinstein did not face the problem of delay inherent in plaintiff's claim here.

Defendant also refers to *Ryan v. Chemlawn,* No. 88 C 6788, slip op. (N.D.Ill. Feb-

---

**4.** There is no mention in Section 136d of any person(s) other than the EPA administrator being able to initiate a review. For example, Section 136d(b) provides that "[i]f it appears to the *administrator* that a pesticide ... generally causes unreasonable adverse effects on the environment, the *administrator* may issue a notice of his intent either—

 (1) to cancel its registration or to change its classification together with the reasons (including the factual basis) for his action, or

 (2) to hold a hearing to determine whether or not its registration should be cancelled or its classification changed."

7 U.S.C. § 136d(b) (emphasis added).

**5.** The opinion itself notes that "[r]ecently, the EPA has taken action *directly relevant* to plaintiff's equitable claims in this litigation." *In re Agent Orange Product Liability Litigation,* 475 F.Supp. at 932 (emphasis added).

ruary 6, 1989). That decision involved another of the former class plaintiffs, as well as the identical motion we face here. Judge Conlon dismissed Ryan's suit without prejudice, exercising her discretion without reference to administrative delay and the resulting prejudice to the litigant forced to await EPA decisionmaking. Further, each of the cases invoked to justify referral involved either short delays[6] or ongoing administrative proceedings,[7] or rejected deference altogether.[8]

Because decisions as to primary jurisdiction lie within the discretion of the trial court, we respectfully disagree with *Ryan* to the extent this opinion is inconsistent.

## II. *The Motion to Dismiss*

■ Defendant first urges this court to dismiss plaintiff's suit. However, the specific circumstances of the case, as well as persuasive precedent, make that option inappropriate.

In analogous situations courts tend to stay the proceedings for a specified period of time pending an administrative determination. For example, in *Retla Steamship Co. v. Pan Ocean Bulk Carriers, Ltd.,* 1979–2 [CCH] Trade Cas. ¶ 62,819 (C.D.Cal. 1981), the court granted a stay but set a nine-month time limit in which to await action by the administrative agency. *Id.* at 78,754. Circuit courts have also looked on dismissals with disfavor. For example, the Ninth Circuit in *Northern California District Council of Hod Carriers, Building, and Construction Laborers, AFL–CIO v. E.J. Opinski et al.,* 673 F.2d 1074 (9th Cir.1982) held that the dismissal by the district court was an abuse of discretion:

[t]he district court would not have abused its discretion had it stayed the instant action.... The district court exceeded its authority, however, when it dismissed the action without prejudice. *Where a court suspends proceedings in order to give preliminary deference to an independent adjudicating body but further judicial proceedings are contemplated, then jurisdiction should be retained by a stay of proceedings, not relinquished by a dismissal.*

*Id.* at 1076 (emphasis added). The Fifth Circuit rendered a similar judgment in *Wagner & Brown v. ANR Pipeline Co.,* 837 F.2d 199. The court held as follows:

To ensure that Wagner & Brown's rights will not be unreasonably delayed or lost, we direct that the district court modify its judgment by vacating its order of dismissal and substituting an order before it for a period of 180 days.... If no such ruling is forthcoming within that time ... then the district court should proceed to adjudicate the rights of the parties without further deference....

*Id.* at 206.

These decisions merely buttress our impression that dismissal would be inappropriate. For example, the relevant statute of limitations might expire while the administrative process slowly evaluates the plaintiff's claim. A stay, however, freezes the limitations clock. And we do not discount that having a pending judicial action, even one temporarily at rest, might better ensure cooperation and diligence by the defendants in the administrative proceeding.

## III. *The Motion to Stay*

While granting a stay would be within our discretion, defendant's motion on that

---

**6.** *See Hansen v. Norfolk & Western Railway Co.,* 689 F.2d 707, 711 (7th Cir.1982) (in reversing district court's dismissal for primary jurisdiction but instituting a stay because of the same, recognizing the likelihood of prompt adjudication because "for many years the ICC has been concerned with the complex policy problems by piggyback service").

**7.** *See* textual discussion of *In re Agent Orange,* 475 F.Supp. 928 (E.D.N.Y.1979) at *supra* p. 366.

**8.** *See Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 305, 96 S.Ct. 1978, 1987, 48 L.Ed.2d 643 (1976) (holding "[r]eferral of the misrepresentation issue to the Board cannot be justified by the interest in informing the court's ultimate decision with the 'expert and specialized knowledge' "); *see also Meat Cutters v. Jewel Tea Co.,* 381 U.S. 676, 686, 85 S.Ct. 1596, 1600, 14 L.Ed.2d 640 (1964) (reinstating district court's dismissal of the complaint because, *inter alia,* "courts are themselves not without experience in classifying bargaining subjects as terms or conditions of employment").

issue is denied. We fear a stay would slow or halt discovery needed by the plaintiff to persuade the administrator of the EPA to initiate action as well as to further her cause in the special review process. In fact, the very nature of the special review process suggests that discovery should go forward. Without information derived therefrom, the EPA might be left with data from only one of the litigants—Chemlawn. Additionally, allowing discovery to go forward will minimize delay at a later date should this court decide that the EPA has had ample time in which to render a result. If we halt discovery now, we could add a year or more to the eventual resolution of this lawsuit.

While not granting defendant's motion to stay, this court strongly urges plaintiff to start the administrative ball rolling, and our decision not to grant a stay assumes that she will do so. Discovery should continue coterminous with the EPA review. If this court should later determine that because of the duration of the EPA review Roberts is being prejudiced, a trial date will be set and the case will proceed accordingly. Meanwhile, we will continue to hold status conferences in order to supervise discovery and be kept apprised of the review progress.

It should be stressed that in all the above cases a stay was granted for a maximum of nine months, and most deferred to ongoing proceedings. Those courts reasonably expected a decision from the administrative agency within the specified time period. We have no comparable expectation here. According to the GAO, the quickest period in which the EPA could complete the special review is two years—and that estimates the delay for a single evaluation. Here, however, disputes exist over the safety of eight separate pesticides as well as their various mixtures and combinations (pl. mem. in resp. at 5 n. 1). Given how rarely courts have been asked to invoke primary jurisdiction in the face of such potentially large delays, we feel our departure from the norm is justified.

## IV. *Exhaustion*

We first noted our preference for administrative relief, but we have expressed our concern with the potential delay. For the moment, those fears excuse plaintiff from exhausting her administrative remedies. Echoing one of the conventional exceptions, the Tenth Circuit has stated that "[n]or will exhaustion of administrative remedies be required where it would result in irreparable harm. This is especially true where time is crucial to the protection of substantive rights and administrative remedies would involve delay." *R.E. Martinez et al. v. Richardson et al.*, 472 F.2d 1121, 1125 (10th Cir.1973); *see also Walker v. Southern Ry. Co.*, 385 U.S. 196, 198, 87 S.Ct. 365, 366, 17 L.Ed.2d 294 (1966) (results of a congressionally-initiated inquiry that administrative relief could take up to ten years justified excusing exhaustion); *Smith et al. v. Illinois Bell Telephone Co.*, 270 U.S. 587, 591, 46 S.Ct. 408, 409–10, 70 L.Ed. 747 (1926) (agency delay of two years in action challenging telephone rate schedule justified excusing exhaustion); *New Mexico Association for Retarded Citizens v. State of New Mexico*, 678 F.2d 847, 850 (10th Cir.1982) (delay in suits challenging government treatment of handicapped individuals in the public schools justified excusing exhaustion); *Camenisch v. University of Texas*, 616 F.2d 127, 133 (5th Cir.1980) *vacated on other grounds*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) (delay in reviewing requests by handicapped students for special treatment by the university justified excusing exhaustion). Plaintiff alleges that the requisite irreparable harm would befall her during any administrative delay (pl. mem. in resp. at 7). Verification of that contention will have to await further factual development for at this stage we take all well-pleaded allegations as true.

*Ryan* concludes that "[t]he unique factual setting of this case requires Ryan to exhaust administrative remedies." *Ryan v. Chemlawn, supra,* slip op. at 1. We again choose to exercise our discretion differently. The cases invoked thereafter recognize that "were the prescribed administrative procedure" shown "to be inadequate to prevent irreparable injury," courts

should decline to require exhaustion. *Babcock and Wilcox Co. v. Marshall*, 610 F.2d 1128, 1138 (3d Cir.1979) (citations omitted); *see also Bethlehem Steel Corp. v. E.P.A.*, 669 F.2d 903, 907 (3d Cir.1982) ("Another exception to the exhaustion requirement [is] applied when irreparable injury will result unless the court promptly intervenes in the administrative process ...") (citation omitted). We disagree with Judge Conlon only in our application of the facts to that judicially-created exception. As previously mentioned, we take as true plaintiff's allegation of the requisite irreparable harm. That representation compels us to deny defendant's motion to require the exhaustion of administrative remedies.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied, as is its motion, in the alternative, to stay these proceedings.