Deborah RYAN, on her own behalf and on behalf of her son, Kevin, Plaintiff–Appellant,

v.

CHEMLAWN CORPORATION, and Chemlawn Services Corporation, Defendants–Appellees.

No. 89–1494.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 8, 1990.

Decided June 21, 1991.

Deborah Ryan, Arlington Heights, Ill., Dennis Carlson, Chicago, Ill., for plaintiff-appellant.

Thomas F. Tobin, Baker & McKenzie, Chicago, Ill., John H. Leddy, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., Michael Yarbrough, Frost & Jacobs, Columbus, Ohio, for defendants-appellees.

Before COFFEY and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

Plaintiff-appellant, Deborah Ryan (on her own behalf and on behalf of her son, Kevin Ryan) appeals the district court's dismissal of her tort claim for injuries allegedly caused by her and her son's exposure to defendant's pesticide products. The district court dismissed the plaintiff's claim after determining that the facts contained in her complaint were highly technical and that the issues raised would be better resolved by the Environmental Protection Agency. We reverse.

## I. FACTS AND PROCEEDINGS BELOW

The case before us is one of a series of cases originally brought in the Eastern District of Pennsylvania on behalf of a larger number of plaintiffs from various parts of the United States who alleged that exposure to the pesticide products applied by the defendant had caused them to suffer numerous physical injuries. The original case, *Blake v. ChemLawn Services Corp.*, Civil Action No. 86-1343 (E.D.Pa.), was filed in July, 1986, and was initially brought as a class action. However, the trial court denied the motion for class certification and ordered each individual case transferred to the jurisdiction where the individual plaintiff resided.

The complaint filed in the Northern District of Illinois (Eastern Division) set forth an independent state cause of action for negligence and strict liability, and requested compensatory and punitive damages, as well as injunctive relief. On appeal, the plaintiff has dropped her request for injunctive relief. The plaintiff alleges that beginning in 1986, the defendant applied certain pesticide products to lawns in the immediate vicinity of the plaintiff's residence.[1] The complaint alleges that as a result of such spraying activities on the part of the defendant, Deborah Ryan suffered numerous ailments including heart arrhythmias, loss of feeling in limbs, depression, and disorientation. The complaint further alleges that Kevin Ryan was repeatedly exposed to the pesticide products applied by the defendant which caused him to develop upper respiratory distress, swelling, and disorientation.

On February 6, 1989, the district court granted the defendant's Motion to Dismiss, finding that the plaintiff's claims fell within the primary jurisdiction of the EPA, and required the plaintiff to exhaust available administrative remedies before having her claims adjudicated in the district court. The plaintiff now appeals from this dismissal.

## II. ISSUE FOR REVIEW

The only issue we must decide is whether the district court properly dismissed the plaintiff's state law claims for compensation and punitive damages for injuries allegedly caused by the defendant's alleged negligent use of pesticide products based on its finding that the EPA had primary

---

1. The defendant provides lawn, tree, and shrub care treatments. The defendant does not manufacture any pesticide product, rather every product used by the defendant is purchased from independent manufacturers and suppliers (none of which are parties to this litigation). Each of the eight pesticide products used by the defendant has been registered by those independent manufacturers and suppliers with the Environmental Protection Agency pursuant to the Federal Insecticide, Fungicide and Rodenticide Act.

jurisdiction with regard to those issues raised in the plaintiff's complaint.

## III. DISCUSSION

The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties:

"[Primary jurisdiction] applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation."

*United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956) (citations omitted).

In the wake of *Western Pacific,* other Supreme Court decisions have stated several strong policy reasons for applying the primary jurisdiction doctrine. Initially, primary jurisdiction promotes consistency and uniformity, particularly where the development of the law is dependent to some degree upon administrative policy. *Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303–04, 96 S.Ct. 1978, 1986–87, 48 L.Ed.2d 643 (1976). Second, an administrative agency is uniquely qualified to resolve the complexities of certain areas which are outside the conventional experience of the courts. *Ford Motor Company v. NLRB,* 441 U.S. 488, 496, 99 S.Ct. 1842, 1848, 60 L.Ed.2d 420 (1979). Finally, primary jurisdiction serves judicial economy because the dispute may be decided within the agency, thus obviating the need for the courts to intervene. *Christian v. New York State Department of Labor,* 414 U.S. 614, 622, 94 S.Ct. 747, 751, 39 L.Ed.2d 38 (1974).

This court has adopted a case by case approach to determine when the doctrine of primary jurisdiction should apply:

"There is no fixed formula for the invocation of the doctrine of primary jurisdiction and 'the decision whether to apply it depends upon a case by case determination of whether, in view of the purposes of the statute involved and the relevance of administrative expertise to the issue at hand, the court ought to defer initially to the administrative agency.' "

*Bradford School Bus Transit v. Chicago Transit Authority,* 537 F.2d 943, 949 (7th Cir.1976) (quoting *Feliciano v. Romney,* 363 F.Supp. 656, 674 (S.D.N.Y.1973)).

In the case before us, the district court determined that the plaintiff's claims fell within the primary jurisdiction of the EPA:

"Ryan's complaint essentially asks this court to substitute its judgment for that of the EPA and to decide whether the active and inert chemical ingredients in ChemLawn's products are safe for commercial use. Issues raised by the complaint include whether the active and inert ingredients are carcinogenic, teratogenic or phytotoxic, and whether these ingredients accumulate in human tissue causing detrimental physiological effects. Resolution of these issues involves a command of arcane technical data, uniquely within the EPA's competence. Therefore, Ryan's claims fall squarely within the EPA's primary jurisdiction."

Thus, the district court dismissed the plaintiff's complaint without prejudice.

█ We do not agree with the district court that this is a case where the primary jurisdiction doctrine should be invoked. First, the plaintiff has dropped her claim for injunctive relief against the defendant. Therefore, hers is a claim that seeks only monetary damages, and as both parties agree that the EPA cannot provide the plaintiff with any form of compensatory or punitive damages, we fail to understand what role the EPA can play in this suit nor has the district court given this court any reason to rule otherwise.

Second, the plaintiff's suit does not rely on federal law, but alleges an independent state law cause of action for negligence and strict liability. The defendant argues that the plaintiff's complaint raises issues that go to the heart of the EPA's registration and regulation of pesticides. However, whether a particular pesticide meets the EPA's registration requirements or whether the EPA's regulation of a pesticide is somewhat flawed are not at issue, and the plaintiff is not required to prove either in order to prevail on her complaint. In fact, no regulation or registration provisions of the EPA are involved. Instead, the plaintiff has alleged state common law causes of action and remedies that are not dependent on any EPA provisions. Even if the plaintiff was able to show some irregularity in the EPA's regulation of pesticides, such a showing would not be dispositive because their claim is directed solely towards the alleged negligence on the part of the defendant.

The defendant makes much of the fact that the district court stated that resolution of the issues raised in the plaintiff's complaint required "a command of arcane technical data, uniquely within the EPA's competence." However, as we noted *supra*, the plaintiff's complaint involves a garden variety personal injury suit based on the defendant's alleged negligence, and as such, there is no reason for the EPA to be brought in. We fail to see how this claim is any different from the thousands of other personal injury suits filed annually alleging a design defect or an inherently unsafe product that are regularly decided in the courts. For instance, there are thousands of state and federal tort cases brought each year alleging an automobile design or safety defect that are decided in the courts and not by the National Highway Safety and Transportation Board. If the district court believed that it needed specific information from the EPA to decide this case, it could have asked the EPA to file an *amicus* brief. However, we believe that dismissal of plaintiff's personal injury suit is an extreme measure given that the issues raised in the complaint do not implicate any EPA action.

■ Finally, none of the policy reasons for applying primary jurisdiction exists in our case. Consistency and uniformity will not be promoted because the resolution of the plaintiff's complaint is not dependent in any way on EPA policy. *See Nader;* the plaintiff's personal injury suit requires no special expertise or knowledge on the part of the district court and is similar to the tens of thousands of personal injury suits alleging defective design or an inherent defect that are decided each year in state and federal courts. *See Ford Motor Co.;* judicial economy will be better served by allowing the plaintiff the opportunity to recover damages if she is entitled to any from the only forum that can provide them, the court. *See Christian.*[2]

## IV. CONCLUSION

The decision of the district court is RE-VERSED and the case is REMANDED pursuant

---

**2.** Because we reverse the district court's dismissal for primary jurisdiction, we need not address the issue of whether the district court abused its discretion by dismissing rather than staying the plaintiff's action. However, this court has previously noted that a stay is preferable over a dismissal, even a dismissal without prejudice. *Rosser v. Chrysler Corporation,* 864 F.2d 1299, 1308 (7th Cir.1988). " 'A dismissal, even without prejudice, creates a risk that ... plaintiff will be time-barred from reinstating his ... suit if the [collateral] proceeding does not result in a final decision on the merits.' " *Rosser* at 1308 (quoting *Lumen Construction, Inc. v. Brant Construction Co.,* 780 F.2d 691, 698 (7th Cir.1985)). The possibility of the plaintiff's suit in the case before us being time-barred had we affirmed the district court's decision finding primary jurisdiction is very real, given that the plaintiff would be forced to return to the district court to receive damages following a lengthy EPA review. Indeed, a recent district court ruling on the same defendant's motion to dismiss in a case which arose out of the original proposed class action rejected the primary jurisdiction doctrine on the grounds that an EPA administrative review would take years to complete, and thus cause irreparable harm to the plaintiff. *Roberts v. ChemLawn Corporation,* 716 F.Supp. 364 (N.D.Ill.1989). Therefore, a stay in this action, stopping the statute of limitations clock from running during the administrative review, would have been preferable to a dismissal.

to Circuit Rule 36 [3] for further proceedings consistent with this opinion.

3. Circuit Rule 36 provides:
"Whenever a case tried in a district court is remanded by this court for a new trial, it shall be reassigned by the district court for trial before a judge other than the judge who heard the prior trial unless the remand order directs or all parties request that the same judge retry the case."