**CINCINNATI BELL TELEPHONE COMPANY, Plaintiff–Appellee, Cross–Appellant,**

v.

**ALLNET COMMUNICATION SERVICES, INC., Defendant–Appellant, Cross–Appellee.**

Nos. 92–4044, 92–4170.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1993.

Decided March 3, 1994.

Rehearing Denied April 7, 1994.

---

Douglas E. Hart, Frost & Jacobs, Cincinnati, OH (argued and briefed), for Cincinnati Bell Telephone Co.

Judith B. Sanders, Bell, Royer & Sanders, Columbus, OH (argued and briefed), for Allnet Communication Services, Inc.

Before: BOGGS and NORRIS, Circuit Judges; and BELL, District Judge.*

ALAN E. NORRIS, Circuit Judge.

The district court granted summary judgment in the amount of $185,000 to plaintiff, Cincinnati Bell Telephone Company ("CBT") 810 F.Supp. 217. This amount reflected access service charges that defendant, Allnet Communication Services, Inc. ("Allnet"), had refused to pay.

Allnet appeals both the summary judgment and the district court's denial of a stay in the proceedings pending a decision by the Federal Communications Commission ("FCC").

While we affirm the district court's order directing Allnet to pay CBT for services rendered, we vacate and remand for recalculation of that portion of the judgment awarding late charges.

## I.

Under the Communications Act of 1934, 47 U.S.C. § 151 *et seq.*, the FCC has the power to set a target for the maximum allowable

---

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

rate of return on capital for federal communication carriers. *See Ohio Bell Telephone Co. v. F.C.C.*, 949 F.2d 864, 867 (6th Cir.1991). For the 1987–88 monitoring period, that rate was approximately 12%, with a 12.4% cap for the interstate access category. CBT had a 14% rate of return for interstate access charges for that period. Allnet, a CBT interstate access customer, withheld $185,000 when it paid CBT's 1990 billings as a means of reimbursing itself for amounts it claimed it was overcharged due to excess earnings in 1987–88.

On September 27, 1991, Allnet filed an action with the FCC claiming that CBT had charged unreasonable and unlawful rates in 1987–88 and that Allnet was therefore entitled to a refund. In November 1991, CBT filed suit against Allnet in state court for the amount Allnet had withheld. That lawsuit was removed to federal court. Allnet then sought to stay the district court proceedings until the FCC ruled on the reasonableness of CBT's 1987–88 rates. The district court denied the stay, observing that "[t]o hold otherwise would encourage customers to set-off when access charges are in dispute."

The district court then granted CBT's motion for summary judgment, ordering the $185,000 to be paid, because it found there to be no genuine dispute as to the material facts. It also ordered Allnet to pay 6% simple interest on the past-due amount, rather than the 18% contained in CBT's filed tariff.

## II.

Allnet appeals the grant of summary judgment in favor of CBT for payment of the delinquencies. This court reviews a grant of summary judgment *de novo. Flacche v. Sun Life Assurance Co. of Canada (U.S.)*, 958 F.2d 730, 733 (6th Cir.1992). To withstand a motion for summary judgment the opposing party "may not rest upon the mere allega-

tions or denials" in its pleadings, but must respond "by affidavits or as otherwise provided ... [setting] forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[M]ere conclusory allegations are not sufficient to withstand a motion for summary judgment." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir.1990).

■ Allnet complains that the district court did not properly entertain its defense against CBT that CBT's rates had been unreasonable. This argument fails as a matter of law, at least as it relates to Allnet's defense that it failed to pay the entire amount of the bills in order to work a refund of its alleged overpayments during the 1987–88 period. A challenge to the unreasonableness of rates is a claim in its own right and, if asserted in response to a collection action in district court, should be raised by counterclaim. *See Reiter v. Cooper*, —— U.S. ——, ——, 113 S.Ct. 1213, 1217, 122 L.Ed.2d 604 (1993).[1] But, asserting in this action a claim for a refund runs afoul of 47 U.S.C. § 207, which provides that:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may *either* make complaint to the Commission ... or may bring suit for the recovery of damages ... in any district court ... but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207 (emphasis added). Because Allnet chose to pursue with the FCC its remedy concerning the 1987–88 access charges, it could not raise as a counterclaim in district court its claim for a refund for those years.

However, Allnet claims that its filings with the district court[2] also challenged the propriety of 1990 charges. Its FCC action did not include a challenge to the 1990 access rates.

1. Although *Reiter* interprets the Interstate Commerce Act ("ICA"), 49 U.S.C. § 10701 *et seq.*, the ICA's provision authorizing a civil action, 49 U.S.C. § 11705(b)(3), is sufficiently analogous to 47 U.S.C. § 206 to apply the same reasoning for this issue. *Cf. Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 577 n. 7, 101 S.Ct. 2925, 2930 n. 7, 69 L.Ed.2d 856 (1981) (stating that where two statutes "are in all material respects substantially identical," the court interchangeably cites decisions interpreting the pertinent sections).

2. The motion for summary judgment was filed and decided before Allnet's answer.

Thus, according to Allnet, its claim for a refund on 1990 access charges was effectively before the district court.[3]

In view of the Supreme Court's opinion in *Reiter*, it could be argued that, since Allnet did not assert a 1990 claim before the FCC, the district court would have been in a position to consider a properly raised counterclaim for a refund in the same lawsuit which was brought by CBT to collect the access charge arrearages. That would have permitted the district court to grant judgment to CBT for the amount due under its filed rate, pursuant to Federal Rule of Civil Procedure 54(b), and then to have turned to the adjudication of Allnet's unreasonable rate counterclaim. This could be seen as consistent with the filed rate doctrine's[4] requirement that the filed rate should be paid first and then relief from an unreasonable rate sought as a separate claim. *See Reiter*, —— U.S. at ——– ——, ——, 113 S.Ct. at 1217–18, 1221.

█ We need not decide the validity of the argument, however, since we do not believe Allnet challenged the 1990 access charges in a cognizable manner. Although Allnet's affidavits mention 1990 charges, they do so only in conclusory legal terms. For instance, they characterize the 1990 charges as "unlawful, unreasonable, [and] discriminatory." No specific facts detailing these allegations were submitted to the district court, nor was any supporting documentation attached. Allnet stated in one affidavit its intent to file additional complaints against CBT for claimed 1989–90 overcharges. Allnet also admitted in its affidavits that the Allnet complaint filed

with the FCC concerning 1987–88 overcharges "involves the same issues raised in the Cincinnati Bell complaint." Allnet's affidavits made clear that it intended to challenge only the 1987–88 rates in the instant suit, and it did not therefore factually support any other defense it might have had. The conclusory allegations in the affidavit fail to rise to a level sufficient to withstand summary judgment.

Because Allnet chose to litigate its claims based upon the reasonableness of the 1987–88 rates in front of the FCC and failed to raise any genuine issue of material fact concerning 1990 charges, the motion for summary judgment was properly granted.

Allnet also appeals the district court's failure to stay CBT's collection action until the FCC had ruled on the reasonableness of CBT's 1987–88 filed tariff rates. A district court's decision to stay a collection proceeding until the Commission has ruled on the reasonableness of the rates is subject to abuse of discretion review. *See Reiter*, —— U.S. at ——, 113 S.Ct. at 1219.

█ The district court denied Allnet's request for a stay because it concluded that the issues raised by Allnet's defense were the same as those it was pursuing before the FCC and 47 U.S.C. § 207 provides that an aggrieved party may only pursue its action in one forum. It further concluded that set-offs should be discouraged in rate disputes because "where there is a dispute about the appropriate rate, the equities favor allowing the carrier's rate to control pending decision by the Commission." *Burlington Northern*,

---

**3.** In its brief, filed before the Supreme Court issued its opinion in *Reiter*, Allnet referred to its having raised the access rate challenge as a defense. In view of *Reiter*, we assume Allnet would contend that its "defense" should be construed as a "counterclaim."

**4.** The filed rate doctrine, which is codified in the Communications Act of 1934 at 47 U.S.C. § 203(c), states:

[N]o carrier shall (1) charge, demand, collect, or receive a greater or less or different compensation for such communication, or for any service in connection therewith, between the points named in any such schedule than the charges specified in the schedule then in effect, or (2) refund or remit by any means or device

any portion of the charges so specified, or (3) extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified in such schedule.

The filed rate doctrine "specifically forbids carriers from charging or collecting different compensation than specified in an effective tariff. Tariffs which are administratively valid operate to control the rights and liabilities between the parties. Rates published in such tariffs are rates imposed by law." *In the Matter of MCI Telecommunications Corp.*, 62 F.C.C.2d 703, 706 (1976) (citing cases). This rule attempts to lessen the possibility that regulated monopolies will engage in price discrimination, price gouging, or other unfair practices.

*Inc. v. United States,* 459 U.S. 131, 141, 103 S.Ct. 514, 521, 74 L.Ed.2d 311 (1982).

Allnet is unable to point out how the equities require us to treat the district court's refusal to grant the stay as an abuse of its discretion.

■ Cincinnati Bell cross-appeals the award of a late payment fee by the district court in the amount of 6%. CBT's filed tariff states that it is entitled to 18% simple interest (or .0493% per day simple interest) as a penalty for amounts not paid timely by a customer because of a billing dispute, when that dispute is ultimately resolved in CBT's favor. Because CBT's filed tariff controls the amount of interest due in this case, *see* 47 U.S.C. § 203(c), an award different from this amount was inappropriate. The FCC has the power to determine that rate to be unreasonable, but until it does, the parties are bound by the lawfully filed tariff.

### III.

We **affirm** the district court's denial of a stay in this action and its grant of summary judgment in favor of CBT, but **vacate** the late payment award and **remand** this cause to the district court in order that it may modify its order to comply with this opinion.