FRONTIER COMMUNICATIONS OF MT. PULASKI, INC., Frontier Communications–Schuyler, Inc., Frontier Communications–Midland, Inc., Plaintiffs,

v.

AT & T CORPORATION, Defendant.

No. 96–3277.

United States District Court, C.D. Illinois, Springfield Division.

March 28, 1997.

---

Larry D. Kuster, Jacksonville, IL, Peter V. Baugher, Chicago, IL, for plaintiffs.

D. Cameron Findlay, Susan M. Davies, Chicago, IL, Byron G. Cudmore, Springfield, IL, Lois J. Lipton, Lily Haery, Chicago, IL, for defendant.

## *OPINION*

RICHARD MILLS, District Judge:

Choices always have consequences.

The choice of forum is no different.

Here, the choice of forum determines whether or not the defendant has a viable defense to this collection action.

### I. FACTS

This cause is before the Court on the Plaintiffs' Motions for Partial Summary Judgment and Defendant's Motion to Refer this Case to the Federal Communications Commission Under the Doctrine of Primary Jurisdiction.

This case is the product of consolidating three similar actions. Two of the actions were filed in state court, by Frontier Communications of Mt. Pulaski, Inc., (Frontier Mt. Pulaski) and Frontier Communications–Schuyler, Inc. (Frontier Schuyler) respectively, and removed to this Court by AT & T Corp. (AT & T). Frontier Communications–Midland, Inc. (Frontier Midland) filed the third action in this Court.

Frontier Mt. Pulaski, Frontier Schuyler, and Frontier Midland are all subsidiaries of Frontier Corp. The Court will call these enti-

ties collectively Frontier. In telecommunications industry parlance, Frontier is a Local Exchange Carrier (LEC) and AT & T is an interexchange carrier. To laymen, Frontier is a local telephone company and AT & T is a long distance telephone company For a telephone customer to place a long distance call, the call must first pass through lines and switches that belong to the LEC. Such service is called originating access service. Similarly when the call reaches its destination, it must pass through lines and switches that belong to the LEC for the destination area. Such service is called terminating access service.

Frontier provides local exchange service within Logan, Schuyler, and Champaign Counties in Illinois. When Frontier's customers place long distance telephone calls using AT & T's long distance service, Frontier bills AT & T for originating access service. Likewise, when an AT & T long distance customer places a telephone call to someone served by Frontier, Frontier bills AT & T for terminating access service.

The rates Frontier may charge AT & T for LEC service are governed by tariffs that Rochester Telephone Corp., Frontier's predecessor, filed with the FCC and the Illinois Commerce Commission. Frontier charges AT & T by the minute for terminating and originating access service. Frontier has billed AT & T at the rates stated in the tariffs. AT & T does not dispute that the rates Frontier charges are contained in properly filed tariffs and that Frontier's invoices accurately reflect the number of minutes of service Frontier has provided to AT & T. Since about October 1996, however, AT & T has refused to pay certain portions of Frontier's invoices. Currently, the total AT & T has withheld exceeds $1 million.

The only dispute in this case concerns Frontier's relationships with some of its customers. AT & T alleges that Frontier pays kickbacks to some phone customers to induce them to set up businesses within the areas Frontier serves. Specifically, AT & T claims that Frontier has agreed to provide these customers a portion of the revenue Frontier earns from AT & T and other long distance providers from terminating access service. AT & T claims that Frontier's practice of providing kickbacks violates Frontier's duties under the Communications Act of 1934 to provide nondiscriminatory service at fair and reasonable rates.

To vindicate its claim, AT & T filed a complaint with the FCC on July 6, 1996. The FCC Complaint names Frontier Mt. Pulaski, Frontier Schuyler, and Frontier and contains three causes of action: (1) that Frontier's arrangements with some of its customers violate the principle that common carriers may only act as objective conduits for communications; (2) that Frontier's practice of providing kickbacks to certain customers violates 47 U.S.C. § 201(b) because the practice is unjust and unreasonable; and (3) that Frontier's alleged practice discriminates against other Frontier customers in violation of Section 202(a) of the Communications Act. In the FCC Complaint, AT & T seeks damages in the amount of all charges AT & T paid for terminating access service for calls to the customers allegedly receiving kickbacks.

This consolidated case is a collection action brought by Frontier against AT & T to collect unpaid local access charges. In this case, AT & T has asserted several "Affirmative Defenses": (1) that the Complaint fails to state a claim upon which relief can be granted (AT & T does not press this defense in opposition to Frontier's motions for summary judgment); (2) that the FCC has primary jurisdiction over these claims; (3) that Frontier's claims are barred because the alleged kickbacks give Frontier a direct interest in the delivery of calls to certain end users thus depriving Frontier of common carrier status under 47 U.S.C. § 153(h); (4) that Frontier's practices are "unjust and unreasonable" under 47 U.S.C. § 201(b); (5) that Frontier's practices amount to "unreasonable discrimination" under 47 U.S.C. § 202(a); and (6) that this action is barred by 47 U.S.C. § 228(e)(2)[1].

1. The plain language of § 228(e)(2) shows that it is not applicable to this action; therefore, the Court will not consider AT & T's sixth Affirmative Defense.

Although the FCC Complaint and this case differ in some respects, AT & T notes in its memorandum in support of its motion to refer that "there is already pending at the FCC a case between precisely these same two parties involving precisely the same access charges that plaintiffs seek from AT & T here." That is certainly true, since AT & T's defenses in this case mimic its causes of action in its FCC Complaint.

## II. SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "should be granted if the pleadings and supporting documents show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2507, 91 L.Ed.2d 202 (1986). Courts must consider evidence in the light most favorable to the nonmoving party *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

## III. ANALYSIS

A. *AT & T's "Affirmative Defenses" are Barred by 47 U.S.C. § 207*

■ AT & T elected to challenge Frontier's alleged practice of providing kickbacks in its complaint before the FCC. Now that Frontier has sued AT & T to collect unpaid bills, AT & T defends by arguing that Frontier has violated the Communications Act. The Communications Act, however, allows aggrieved parties to challenge assertedly illegal practices *either* before the FCC *or* before the federal courts, *but not before both*. AT &

T chose the FCC as its forum, and now may not challenge Frontier's alleged practice of providing kickbacks in this Court. Furthermore, because the prevailing rule is that customers of common carriers must pay filed rates before challenging the rates as unreasonable, and because waiting for the FCC to rule on AT & T's Complaint will cause inordinate delay, the Court will enter summary judgment against AT & T and in favor of Frontier in the amount of all unpaid access charges and all applicable late fees.

■ Initially, the Court concludes that AT & T's "Affirmative Defenses" are properly considered counterclaims. The Supreme Court has held that claims challenging the reasonableness or fairness of common carrier rates asserted in response to collection actions by the common carrier are properly considered counterclaims. *Reiter v. Cooper*, 507 U.S. 258, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). *Reiter v. Cooper* involved a suit by a common carrier against a shipper. The carrier had agreed to carry goods for the shipper at rates lower than the carrier's filed rates. The carrier then filed for bankruptcy and its trustee sued the shipper to recover the difference between the rates paid and the filed rates. The shipper defended on the ground that the filed rate was unreasonable in light of carrier's prior agreement to accept less than the filed rate. *Id.* at 261–62, 113 S.Ct. at 1216–17. The Supreme Court held that the unreasonable rate claim was a counterclaim not a defense because the unreasonableness claim was a separate cause of action authorized by statute. *Id.* at 262–63, 113 S.Ct. at 1217–18. Although *Reiter* involved application of the Interstate Commerce Act (ICA), the principle enunciated there applies equally to this case, which involves telecommunications laws built on the same model as the ICA.

■ When AT & T's "Affirmative Defenses" are properly considered as counterclaims [2], a problem emerges. 47 U.S.C. § 207 allows customers of common carriers to challenge filed rates either before the FCC or in the federal courts, but not in both

**2.** *See* Fed.R.Civ.P. 8(c)( "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on

terms, if justice so requires, shall treat the pleading as if there had been a proper designation.").

fora.[3] A counterclaim is a freestanding cause of action. Thus, because AT & T has raised its causes of action challenging Frontier's kickbacks in its FCC Complaint, it is barred from raising them as counterclaims in this proceeding. 47 U.S.C. § 207.

The United States Court of Appeals for the Sixth Circuit reached the same conclusion in *Cincinnati Bell Telephone Co. v. Allnet Communication Services, Inc.*, 17 F.3d 921 (6th Cir.1994) (hereafter *CBT*). In *CBT*, a local phone company sued an interstate access customer for unpaid access charges. The customer responded that the rates the local telephone company claimed were unreasonable. *Id.* at 923. Citing *Reiter v. Cooper*, the Sixth Circuit concluded that such claims are counterclaims and run afoul of 47 U.S.C. § 207 if the customer has already filed a complaint relating to the same practices with the FCC. 17 F.3d at 923.

All this leads to the conclusion that AT & T, by filing suit before the FCC, has forfeited its right to defend this action on the ground that Frontier's rates are unreasonable, unfair, or discriminatory AT & T offers no other reason why the Court should not enforce Frontier's filed rates, and AT & T does not contest the accuracy of Frontier's invoices. Therefore, AT & T must pay Frontier for all local exchange service Frontier has provided.

B. *No Factual Issues Preclude Summary Judgment*

■ Attempting to avoid the preceding conclusion, AT & T argues that Frontier's status presents a factual question precluding summary judgment. AT & T claims that Frontier's relationship with certain of its customers deprives Frontier of its common carrier status and denies Frontier the right to

charge AT & T according to its tariffs. AT & T raised exactly the same claim in its FCC Complaint; it is based upon 47 U.S.C. § 153(h). AT & T argues that because Frontier has violated a fundamental principle of "common carriage"—the principle that a common carrier may not have any interest in the destination of its users—Frontier may not charge AT & T according to Frontier's filed rates. This is just another way of saying that Frontier's rates are not reasonable (a claim AT & T makes in its FCC complaint and which is barred by 47 U.S.C. § 207).

Beyond being barred by § 207, AT & T's claim that Frontier is not a common carrier is contrary to the uncontested facts of this case. "'Common carrier' or 'carrier' means any person engaged as a carrier for hire, in interstate or foreign communication for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy...." 47 U.S.C. § 153(h). Frontier is clearly a common carrier. AT & T admits in its Answer to the Consolidated Complaint that "Frontier is a local telephone company that provides originating and terminating access services for interexchange calls, that AT & T uses such services to originate and terminate some long distance calls in Logan, Champaign, and Schuyler Counties, and that Frontier bills AT & T for the access services it provides to AT & T." Based on those facts alone, the Court concludes that Frontier is a common carrier within the meaning of 47 U.S.C. § 153(h). Thus, AT & T's argument that, factually, Frontier is not a common carrier dissolves and becomes an argument that, legally, Frontier's rates are not reasonable. As the Court has already explained, that claim cannot be raised in this proceeding.[4]

---

**3.** 47 U.S.C. § 207 provides:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

**4.** AT & T cites an FCC letter ruling as support for its position that Frontier is not a common carrier because it provides kickbacks to certain customers. Letter Ruling from John B. Muleta, FCC Common Carrier Bureau to Ronald J. Marlowe, 10 FCC Rcd. 10945 (1995). The Marlowe letter ruling concerned a proposed scheme whereby a carrier would have remitted a portion of the transport charge to a party advertising a number to call for a service. The FCC concluded that "[c]ommon carriers engaged in such practices are not providing common carrier communica-

## C. AT & T Must Pay Frontier's Filed Rates

 Under the filed rate doctrine, Frontier's filed rates have the force of law and are absolutely binding upon all users until found invalid in an FCC proceeding or by a federal court. *See Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 127, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990); *Gross Common Carrier, Inc. v. Baxter Healthcare Corp.*, 51 F.3d 703, 706 (7th Cir. 1995). Because AT & T chose to challenge Frontier's rates before the FCC, it may not contest Frontier's collection action on the grounds that Frontier's rates are unreasonable or discriminatory Thus, AT & T must pay Frontier according to the filed rates.

 Before entering judgment in favor of Plaintiffs, the Court still must consider AT & T's "primary jurisdiction" argument.

> "Primary jurisdiction," . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body, in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. *General American Tank Car Corp. v. El Dorado Terminal Co.*, 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361.
>
> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation.

*United States v. Western Pacific R.R.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 164–65, 1 L.Ed.2d 126 (1956). The doctrine of primary jurisdiction requires "a case by case determination of whether, in view of the purposes of the statute involved and the relevance of administrative expertise to the issue at hand, the court ought to defer initially to the administrative agency." *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir.1991) (quoting *Bradford School Bus Transit v. Chicago Transit Authority*, 537 F.2d 943, 949 (7th Cir.1976)).

 AT & T's claim that this is a "paradigmatic" case for applying the doctrine of primary jurisdiction is tied to its right to assert its counterclaims. AT & T argues that whether Frontier's rates comply with the terms of the Communications Act is a question within the expertise of the FCC. Based on that premise, AT & T argues that this Court should not rule until the FCC has decided whether Frontier's rates are proper under the Communications Act. AT & T's argument would have considerable force if AT & T had not filed its complaint with the FCC. But because AT & T filed a complaint with the FCC, it may not raise its reasonableness claims in this Court. Thus, this Court is not faced with the prospect of ruling on a matter within the FCC's expertise and will not render a potentially inconsistent verdict on Frontier's rates. Instead, the Court will simply enforce Frontier's filed rates, leaving to the FCC the question of whether those rates are appropriate under the Communications Act.

The only possible reason to delay a ruling until the FCC decides AT & T's claim is that AT & T might ultimately be entitled to a refund from Frontier of the amount this Court orders AT & T to pay. The risk that Frontier may some day have to pay AT & T back the money it receives in this proceeding is far outweighed by the potential damage that the delay would cause Frontier if the FCC ultimately upholds Frontier's rates.

## IV. CONCLUSION

The Court concludes that AT & T's affirmative defenses must be treated as counterclaims. Those counterclaims are, however, barred by 47 U.S.C. § 207. Additionally, the Court declines to refer this case to the FCC under the doctrine of primary jurisdiction.

---

tions services in a just and reasonable manner required by Section 201(b) of the Act...." Thus, the FCC did not conclude that the proposed scheme would render the carrier not a common carrier, but that the proposed scheme was not just and reasonable and thus prohibited for a common carrier.

*Ergo,* Plaintiff's Motions for Partial Summary Judgment are ALLOWED. Defendant's Motion to Refer this Case to the Federal Communications Commission Under the Doctrine of Primary Jurisdiction is DENIED.

The Court directs Plaintiffs to submit an itemized statement of damages within seven days. Defendant shall have seven days after service of the statement of damages in which to file a response to that statement. After receiving the statement and the response, the Court will determine the proper amount of damages and direct the Clerk of the Court to enter Judgment accordingly.