**Robbin MIRANDA, individually and on behalf of persons similarly situated, and Suzanne Wolfe, individually and on behalf of persons similarly situated, Plaintiffs,**

v.

**State of MICHIGAN, U.S. Sprint Communications Company, GTE North, Inc., Ameritech (f/k/a Michigan Bell Telephone Company), Defendants.**

**No. 00–CV–71238–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 4, 2001.

See also: 141 F.Supp.2d 747.

D. Richard Helson, Helson Manning, East Lansing, MI, for Robbin Miranda and Suzanne Wolfe.

Michael J. Reilly, Fraser, Trebilcock, Lansing, MI, Matthew C. Keck, Michigan Department of Attorney General, Lansing, MI, for State of Michigan.

Herbert C. Dononvan, Detroit, MI, for US Sprint Communications Co.

William A. Sankbeil, Detroit, MI, George R. Ashford, Detroit, MI, for Verizon North, Inc.

## OPINION

DUGGAN, District Judge.

Plaintiffs Robbin Miranda and Suzanne Wolfe, individually and on behalf of persons similarly situated, filed this class action against the State of Michigan and various telephone companies, alleging that Defendants violated Federal and State Antitrust and Telecommunications laws by entering into exclusive inmate telephone agreements under which inmates are restricted to collect only calls for which the recipients are being charged excessive rates and surcharges. On March 29, 2001, the Court entered an order granting summary judgment to the telephone company defendants on all claims. This matter is currently before the Court on the State of Michigan's motion for summary judgment. For the reasons stated below, the State's motion for summary judgment shall be granted.

### Background

At the heart of this controversy is the fact that inmates at correctional facilities in Michigan are prohibited from making telephone calls to persons outside the facility except by means of collect calls from telephones provided by the State through its agreements with the telephone company defendants. Under the State's agreements with the telephone company defendants, all inmate telephone calls originating from a geographic area assigned to one of the telephone companies must be placed via that company. Despite the fact that numerous alternative options may be available at substantially lower rates, neither the inmate, nor the recipient of such calls, may utilize a telephone service provider other than that provided for by the State's agreements.

According to Plaintiffs, the State's agreements result in excessive and discriminatory surcharges and connection fees. Plaintiffs also contend that the State's agreements with the telephone company defendants have produced adverse anticompetitive effects within the market for collect telephone calls, unreasonably restrained trade in interstate commerce, and infringed on their right to obtain access to the interstate common carrier of their choice, in violation of various federal and state laws. Among other things, Plaintiffs seek a declaration that the State's acts are illegal, an order directing the State to provide Plaintiffs with a method for alternative telephone service, restitution, compensatory, and punitive damages.

### Discussion

Summary judgment is proper only if there is no genuine issue as to any materi-

al fact, thereby entitling the moving party to judgment as a matter of law. *Hunter v. Caliber Sys., Inc.,* 220 F.3d 702, 709 (6th Cir.2000); *see also* FED. R. CIV. P. 56(c). There is no genuine issue of material fact for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could "return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, the moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to show that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 800 (6th Cir.1994). The nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Companies, Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). If, after adequate time for discovery, the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53.

The State raises several arguments in support of summary judgment, each of which shall be addressed separately below.

### 1. Standing

■ The State argues that Plaintiffs do not have standing to raise a claim under the Federal Sherman Antitrust Act because they have failed to establish a causal connection between the alleged anti-competitive behavior and their alleged harm. The State also argues that Plaintiffs have failed to allege any right or interest of their own. According to the State, the complaint alleges only that the *prisoners* are not allowed to choose among various phone companies and therefore, the prisoners would be most directly affected by the alleged antitrust behavior. The State further argues that Plaintiffs voluntarily accepted the calls and therefore "waived their acceptance of the telephone calls and the rates charged for those calls." (State's Br. at 10).

The Sixth Circuit has recently explained the importance of establishing standing under the antitrust laws:

Under Sixth Circuit case law, "it is not enough for the plaintiff to claim economic injury: 'Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful.' " *Valley Prods. Co., Inc. v. Landmark, A Div. of Hospitality Franchise Sys., Inc.,* 128 F.3d 398, 402 (6th Cir. 1997) (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)). Such a heightened standard is required because the relevant antitrust laws "were enacted for 'the protection of competition not competitors.' " *Brunswick Corp.,* 429 U.S. at 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 320, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962)).

By emphasizing the importance of establishing "antitrust injury," courts ensure "that antitrust litigants use the laws to prevent anti-competitive action and make[ ] certain that they will not be

able to recover under the antitrust laws when the action challenged would tend to promote competition in the economic sense." *HyPoint Technology, Inc. v. Hewlett–Packard Co.*, 949 F.2d 874, 877 (6th Cir.1991). Otherwise, "routine disputes between business competitors would be elevated to the status of an antitrust action, thereby trivializing the Act because of its too ready availability." *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir.1993).

To assist courts in fulfilling their responsibilities of ensuring that antitrust laws are not "trivialized," the Supreme Court has articulated certain factors to be analyzed in determining whether a plaintiff has established antitrust standing. *See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 537–45, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). Those factors include: (1) the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused; (2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for duplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violation. *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir.1983). All five factors must be balanced, however, with no one factor being determinative. *See Peck v. General Motors Corp.*, 894 F.2d 844, 846 (6th Cir.1990). Furthermore, as noted by this court in *Valley Products*, "[t]he Sixth Circuit, it is fair to say, has been reasonably aggressive in using the antitrust injury doctrine to bar recovery where the asserted injury, although linked to an alleged violation of antitrust laws, flows directly from conduct that is not itself an antitrust violation." *Id.* at 403.

*Indeck Energy Serv., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 976 (6th Cir. 2000).

Plaintiffs have alleged a direct causal connection between their harm, *i.e.*, the allegedly unjust and unreasonable rates, and the alleged antitrust violation, *i.e.*, the State's exclusive agreements with the telephone company defendants. According to Plaintiffs, but for the State's exclusive dealing agreements with the telephone company defendants, they would be able to choose common carriers with less expensive rates. The fact that Plaintiffs voluntarily accepted such calls, or that there are alternative means of communicating with the prisoners, *i.e.*, through mail, does not diminish this causal connection.

Plaintiffs are obviously consumers, not competitors, and therefore, the second factor weighs in favor of antitrust standing. *See id.* at 977. Plaintiffs also allege that they have suffered direct injury in the form of unreasonable rates based upon collect calls in the past. In this Court's opinion, there is nothing speculative about the allegedly unreasonable rates that Plaintiffs have already incurred. The State does not argue that there is a potential for duplicative recovery or complex apportionment of damages and therefore, this factor also weighs in favor of antitrust standing in this case.

■ Finally, the State's argument that it is the prisoners who are most affected by the alleged antitrust behavior is unpersuasive. It is obviously the recipients of the collect-only calls that endure the allegedly unjust and unreasonable rates, not the prisoners. The Court is also unpersuaded by the State's argument that Plain-

· tiffs have waived their right to challenge the allegedly unjust and unreasonable rates by voluntarily accepting the collect-only calls. The State cites no authority for such a proposition and, in this Court's opinion, merely accepting a phone call does not extinguish Plaintiffs' legal rights.

Examining the five factors set forth by the Sixth Circuit, the Court is satisfied that Plaintiffs have sufficiently alleged antitrust standing in this case. However, for the reasons stated below, the Court is nonetheless satisfied that Plaintiffs' claims must be dismissed in their entirety.

*2. The State Action Doctrine and the Federal Sherman Antitrust Act (Count I)*

■■■ Under the state action doctrine, restraints imposed by the State in exercising its sovereign powers are immune from liability under the Sherman Antitrust Act. *See Parker v. Brown,* 317 U.S. 341, 352, 63 S.Ct. 307, 314, 87 L.Ed. 315 (1943).[1] The State "may displace competition with active state supervision if the displacement is both intended by the State and implemented in its specific details." *Federal Trade Comm'n v. Ticor Title Ins. Co.,* 504 U.S. 621, 633, 112 S.Ct. 2169, 2176–77, 119 L.Ed.2d 410 (1992). The precondition for state action immunity, "conferred out of respect for ongoing regulation by the State," is "[a]ctual state involvement" in the alleged restraint, "not deference to private price fixing arrangements under the general auspices of state law." *Id.* "When the conduct is that of the sovereign itself . . . the danger of unauthorized restraint of trade does not arise." *Hoover v. Ronwin,* 466 U.S. 558, 569, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590 (1984).

As the Sixth Circuit has explained:

The unabridged teachings of the [Supreme] Court convey the Court's own unequivocal commitment to and its adamant recognition of the state's sovereign authority to operate its penal institutions. Anchored in the sensitive principles of federalism, this sovereign authority is a prerogative of the state, not a privilege recognized through comity.

940 F.2d 143, 155 (6th Cir.1991) (discussing cases). The State vests the director of the Michigan Department of Corrections ("DOC") with the authority to promulgate rules regarding the management and control of state penal institutions. *See* MICH. COMP. LAWS § 791.206(1)(d). As the Supreme Court of Michigan has recognized, "[t]he Legislature gave DOC broad authority to make rules necessary to manage and control the prison system," implying "that the Legislature intended DOC to address specific issues, such as visitation rules and guidelines." *Blank v. Department of Corr.,* 462 Mich. 103, 128, 611 N.W.2d 530 (2000) (Kelly, J.) (finding that DOC policies that limited number and type of persons that could visit inmates were within DOC's authority).

It was the State itself that dictated the collect-only policy through its mandatory requirements. Furthermore, as the entity that is responsible for monitoring, revising, and enforcing its own requirements regarding the management and control of state penal institutions, the Court is satisfied that the State has exercised sufficient independent judgment and control over the collect-only system challenged by Plaintiffs such that the system is the result of state action. Because the collect-only system rises out of the State's sovereign authority to operate its penal institutions, it is immune from liability under the Sherman Antitrust Act. Accordingly, Plaintiffs'

---

1. The state action doctrine, as well as many of the principles discussed herein, were thoroughly discussed in the Court's prior opinion with respect to the telephone company defendants, *see Miranda v. Michigan,* 141 F.Supp.2d 747 (E.D.Mich.2001), and will be discussed here only to the extent necessary to support the State's arguments.

claims under the Sherman Antitrust Act shall be dismissed.

### 3. State Antitrust Claims (Count II)

■ Plaintiffs' claims under Michigan's Antitrust Act shall also be dismissed. Michigan's Antitrust Reform Act specifically states:

> This act shall not be construed to prohibit, invalidate, or make unlawful any act or conduct of any unit of government, when the unit of government is acting in a subject matter area in which it is authorized by law to act . . . .

MICH. COMP. LAWS § 445.774(3). As discussed *supra,* the DOC is expressly authorized by law to promulgate rules regarding the management and control of state penal institutions. *See* MICH. COMP. LAWS § 791.206(1)(D). Because the DOC is acting in a subject matter area in which it is authorized to act, the conduct complained of by Plaintiffs falls within the governmental exception to Michigan's Antitrust Reform Act. Plaintiffs' claims under the Michigan Antitrust Reform Act (Count II) shall therefore be dismissed.

### 4. Federal Telecommunications Act Claims (Count III)-Section 201(b)-Unjust and Unreasonable Rates

■ The Federal Telecommunications Act generally provides that all charges for telephone services "shall be just and reasonable" and that any charge "that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b). 47 U.S.C. § 201 applies to "common carriers." A common carrier is defined as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy." *Id.* § 153(10). The State argues that it is not a "person" within the definitions of the Telecommunications Act and therefore, cannot be a "common carrier" subject to § 201. *See id.* § 153(32) ("The term 'person' includes an individual, partnership, association, jointstock company, trust, or corporation."). Plaintiffs have not responded to the State's argument.

The Court finds the State's argument to be persuasive for two reasons. First, as the State argues, it does not fall within the definition of person and therefore, cannot, by definition, constitute a common carrier. Furthermore, in this Court's opinion, the State is not "for hire" as required by the definition of a common carrier. Accordingly, the Court is satisfied that § 201 does not apply to the State of Michigan under the facts of this case.

■ Moreover, as discussed at length in the Court's prior opinion with respect to the telephone company defendants, the Court is satisfied that Plaintiffs' claims under § 201 must be dismissed under the filed rate doctrine. Simply stated, under the filed rate doctrine, "any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18 (2d Cir.1994). As the Second Circuit has explained:

> [T]he filed rate doctrine preserv[es] the exclusive role of federal agencies in approving rates for telecommunications services that are "reasonable" by keeping courts out of the rate-making process (the "nonjusticiability strand"), a function that the federal regulatory agencies are more competent to perform. The nonjusticiability strand recognizes that (1) legislatively appointed regulatory bodies have institutional competence to address rate-making issues; (2) courts lack the competence to set . . . rates; and (3) the interference of courts in the rate-making process would subvert the authority of rate-setting bodies and undermine the regulatory regime.

*Fax Telecomm. Inc. v. AT & T,* 138 F.3d 479, 489 (internal quotations and citations omitted); *see also Cincinnati Bell Tel. Co. v. Allnet Comm. Serv., Inc.,* 17 F.3d 921, 924 n. 4 (6th Cir.1994). Two district courts have relied upon the filed rate doctrine in dismissing claims similar to those raised in this case. *See Arsberry v. Illinois,* 117 F.Supp.2d 743 (N.D.Ill.2000) (holding that challenge to fairness of collect call rates from prison inmates' was non-justiciable under "filed rate" and "primary jurisdiction" doctrines); *Daleure v. Kentucky,* 119 F.Supp.2d 683 (W.D.Ky. 2000) (same).

 As also discussed in its prior opinion, the Court is satisfied that Plaintiffs' claims with respect to the rates charged by the telephone company defendants fall within the primary jurisdiction of the FCC and should therefore be dismissed. The doctrine of primary jurisdiction is based upon the principle that:

> "[I]n cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure."

*In re Long Distance Telecomm. Litig.,* 831 F.2d 627, 629–30 (6th Cir.1987) (quoting *Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952)).

Courts have consistently held that claims of unjust and unreasonable practices under § 201(b) of the Federal Telecommunications Act fall within the primary jurisdiction of the FCC. *See, e.g., Long Distance Telecomm. Litig.,* 831 F.2d at 631; *Arsberry,* 117 F.Supp.2d at 744; *Daleure,* 119 F.Supp.2d at 688–90. As the Sixth Circuit has stated, "Section 201(b) speaks in terms of reasonableness, ... a determination that 'Congress has placed squarely in the hands of the [FCC].'" *Id.* (quoting *Consolidated Rail Corp. v. National Ass'n of Recycling Indus., Inc.,* 449 U.S. 609, 612, 101 S.Ct. 775, 777, 66 L.Ed.2d 776 (1981)).

The FCC has repeatedly exercised its authority over inmate calling services. In 1996, the FCC considered whether "billed party preference" systems or rate caps should be required to combat the high charges billed to parties receiving collect-only calls from inmates. (*See* Defs. Ameritech & Verizon's Mot. Dismiss, Ex. 17). In addressing the higher rates often charged to such parties, the FCC noted that prisons often install and maintain security equipment for a number of legitimate penological and governmental interests and therefore, "[g]iven that prisons would likely seek to recover the cost of any equipment employed for legitimate security reasons, [the FCC] would expect that competitive prices for inmate-only telephone calls from prisons could be higher than the rates of calls from ordinary locations." (*Id.,* Ex. 17 at 53).

Despite this expectation, the FCC did invite public comment regarding alternative remedies for the high charges associated with prison inmate telephone services. (*Id.,* Ex. 17 at 53–54, Ex. 18 at 154). Furthermore, it appears that the FCC is currently conducting an ongoing proceeding

regarding inmate payphone services. (*See id.*, Ex. 22).

For all of the above reasons, the Court is satisfied that Plaintiffs' claims against the State under § 201(b) must be dismissed.

*5. Federal Telecommunications Act Claims (Count III)-Section 202(a)-Unjust and Unreasonable Discrimination*

 Section 202(a) of the Federal Telecommunications Act provides that:

It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

47 U.S.C. § 202(a). As discussed *supra*, the Court is satisfied that the State is not a "common carrier" within the definition of the Telecommunications act and therefore, § 202(a) is inapplicable as to the State.

Furthermore, in support of their claim of unjust and unreasonable discrimination, Plaintiffs allege merely that "the rates charged are well in excess of charges to the public and families and friends of inmates in other penal systems for like services" and that "[s]ubstantially lower charges are incurred where telephone calls are made by inmates in penal institutions which utilize other telephone systems (e.g.: the TSI II system utilized by several federal prisons can result in calls as little as $.50; inmate calls in North Carolina, which similarly limits inmates to collect calls, can cost as little as $.90)." (Am. Compl. ¶¶ 19 & 19–A).

 The FCC, as well as several other courts, have recognized that the provision of telephone services to inmates constitutes an exceptional set of circumstances and therefore, such systems are not a like communication service when compared to non-inmate telephone systems. This Court agrees.

 Furthermore, with respect to Plaintiffs' allegations regarding systems used by other correctional institutions, Plaintiffs fail to allege in their amended complaint that the defendants are charging different rates among those inmates using their services. At most, Plaintiffs' complaint alleges merely that several federal and North Carolina institutions that also limit inmates to collect-only calls receive more favorable rates. Plaintiffs fail to allege that any of these institutions are serviced by any of the telephone company defendants in this case, or that the State has participated with those institutions in any manner. Accordingly, Plaintiffs' claims under § 202(a) of the Federal Telecommunications Act shall be dismissed for failure to state a claim.

*6. Federal Telecommunications Act Claims (Count III)-Section 226–Right to Access Carrier of Choice*

 In general, section 226 of the Federal Telecommunications Act provides that each telephone operator service must identify itself to the consumer at the beginning of the call before any charges are incurred, permit the consumer to terminate the call at no charge before the call is placed, and disclose to the consumer immediately upon request, its rates or charges for the call, etc. 47 U.S.C. § 226(b)(1). Section 226 also provides that "aggregators," *i.e.*, persons that make telephones available to the public for interstate calls using operator services, must ensure that "each of its telephones presubscribed to a provider of

operator services allows the consumer to use '800' and '950' access code numbers to obtain access to the provider of operator services desired by the consumer." *Id.* §§ 226(a)(2) & (c)(1)(B). In essence, section 226 provides that neither the location owner, the telephone owner, or the telephone company subscribed to the phone, may prevent the consumer from choosing another telephone carrier for interstate operator-assisted calls.

In 1996, the FCC determined that the definition of "aggregator" within section 226 does not include inmate-only phones at correctional facilities. (*See* FCC Rep. 96–75). According to the FCC, "providing such telephones to inmates presents an 'exceptional set of circumstances' that warrant their exclusion from the definition of 'aggregators.'" (*Id.*). Considering the FCC's findings, the Court is satisfied that section 226 does not apply to inmate-only telephone services. Accordingly, Plaintiffs' claims premised upon section 226 of the Federal Telecommunications Act shall be dismissed.

### 7. *Michigan Telecommunications Act Claims (Count IV)*

 Plaintiffs claims against the State under its own Telecommunications Act must also be dismissed. The Court is satisfied that Plaintiffs' claims under Michigan's Telecommunications Act are preempted by the Federal Telecommunications Act and therefore, such claims shall be dismissed. *See* 47 U.S.C. § 276(c)-(d) (Federal regulations preempt state regulations to the contrary, including regulations regarding inmate telephone service).

### 8. *Michigan Consumer Protection Act Claims (Count V)* [2]

According to Plaintiffs' response, their claim under the Michigan Consumer Protection Act was against only the telephone

company defendants. Accordingly, this claim is moot as to the State of Michigan.

### *Conclusion*

For the reasons stated above, the State of Michigan's motion for summary judgment shall be granted and all counts in the amended complaint shall be dismissed in their entirety.

A Judgment consistent with this Opinion shall issue forthwith.

---

**2.** Count V is improperly designated "Count IV" in the amended complaint.